UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| EDWARD G. RODRIGUEZ,<br><br>    Petitioner,<br>    v.<br><br>TIMOTHY FILSON, *et al.*,<br><br>    Respondents. | Case No. 3:15-cv-00339-MMD-WGC<br><br>ORDER |

**I.    SUMMARY**

Petitioner Edward G. Rodriguez filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. This matter is before the Court for adjudication of the merits of the remaining grounds in the counseled amended petition ("Amended Petition"). For the reasons discussed below, the Court denies the Amended Petition, denies a certificate of appealability, and directs the Clerk of the Court to enter judgment accordingly.

**II.   BACKGROUND**

Rodriguez's conviction is the result of events that occurred in Washoe County, Nevada on or about December 10, 2006. (ECF No. 24-9.) Rodriguez was charged with the murder of Pamela Sue Carter by means of strangulation and/or suffocation. (*Id.*) Rodriguez pleaded not guilty to the charge. (ECF No. 24-10 at 4-5.) During the third day of trial, Rodriguez indicated that it was "in his best interest to enter some type of plea." (ECF No. 25-2 at 67.) Rodriguez pleaded guilty to first-degree murder in return for the State dropping the weapon enhancement. (*Id.* at 67, 75.) During the state district court's plea canvass, Rodriguez explained that Carter owed him money and that he bound and gagged her as a threat to get her to repay him. (*Id.* at 74-75.) Carter was still alive when Rodriguez left her residence, and Rodriguez believed that Carter's husband would

1  simply find her and remove her gag in the morning. (*Id.* at 75.) Rodriguez was sentenced to life without the possibility of parole. (ECF No. 25-3 at 2.) Rodriguez did not appeal his judgment of conviction.

Rodriguez filed a state habeas petition on April 28, 2008. (ECF No. 25-7.) The state district court held an evidentiary hearing on January 21, 2014. (ECF No. 25-17.) Thereafter, on January 30, 2014, the state district court entered an order denying Rodriguez's petition. (ECF No. 25-18.) The Nevada Court of Appeals affirmed on April 14, 2015. (ECF No. 26-5.) Remittitur issued on May 11, 2015. (ECF No. 26-6.)

Rodriguez filed a pro se federal habeas petition and a counseled first amended petition on June 26, 2015 and February 6, 2017, respectively. (ECF Nos. 1-1, 23.) Respondents moved to dismiss the Amended Petition. (ECF No. 27.) This Court granted the motion is part. (ECF No. 33.) Specifically, this Court concluded that Grounds 1(a) and 3 were unexhausted. (*Id.* at 11.) Thereafter, Rodriguez moved to dismiss Grounds 1(a) and 3. (ECF No. 37.) This Court granted the motion. (ECF No. 38.) Respondents answered the remaining grounds in Rodriguez's Amended Petition on August 27, 2018. (ECF No. 43.) Rodriguez replied on November 27, 2018. (ECF No. 46.)

In his remaining grounds for relief, Rodriguez asserts the following violations of his federal constitutional rights: (Ground 1(b)) his trial counsel failed to inform him that he had the right to a direct appeal; and (Ground 2) his trial counsel failed to investigate and present mitigating evidence on his behalf at sentencing. (ECF No. 23 at 10-13.)

**III.    LEGAL STANDARD**

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision violates clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

3

## IV.   DISCUSSION

Rodriguez's remaining grounds for relief involve claims that his trial counsel was ineffective. In *Strickland*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential.") The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were

///

reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

In Rodriguez's appeal of the denial of his state habeas petition, the Nevada Court of Appeals noted that:

> The district court conducted an evidentiary hearing and received testimony from Rodriguez, his trial counsel, and his sister. The district court found that Rodriguez failed to demonstrate that trial counsel had a legal duty to inform him of the right to a direct appeal, that further trial preparation would have produced helpful information, or that further sentencing preparation would have produced mitigation witnesses whose testimony would have led to a lesser sentence. And the district court concluded that Rodriguez failed to meet his burden to prove ineffective assistance of counsel.

(ECF No. 11-4 at 2-3.) The Nevada Court of Appeals then held that because the district court's factual findings were supported by substantial evidence, Rodriguez failed to show that he was deprived of effective assistance of counsel. (*Id.*)

The Nevada Court of Appeal's rejection of Rodriguez's *Strickland* claims was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court. The Court will address the two remaining ineffective assistance of counsel grounds in turn below.

**A. Ground 1(b)**

In Ground 1(b), Rodriguez alleges that his federal constitutional rights were violated when his trial counsel failed to inform him that he had the right to a direct appeal. (ECF No. 23 at 10.) Rodriguez explains that a rational defendant would have wanted to appeal the maximum sentence he received, so his trial counsel's duty to discuss an appeal with him was triggered. (ECF No. 46 at 9.)

During Rodriguez's change of plea canvass, the following colloquy took place between Rodriguez and the state district court:

> THE COURT: If the jury were to find you guilty, you could appeal. Do you understand that?
> [Rodriguez]: Yes, I do. Can I appeal now that - - because of - - if my pleading guilty, is that still appealable?

| | | |
|---|---|---|
| THE COURT: | | No. The jury will not hear and decide the remainderer [sic] of your trial if the Court accepts your guilty plea. Do you understand that? |
| [Rodriguez]: | | Yes, I do, Your Honor. |

(ECF No. 25-2 at 71.) Rodriguez did not appeal his judgment of conviction.

Over six years later, during Rodriguez's post-conviction evidentiary hearing, Rodriguez testified that his trial counsel "never brought any appeal issues up, or [Rodriguez] would have [taken] back [his] sentence in a heartbeat." (ECF No. 25-17 at 5, 33.) Rodriguez did not ask his trial counsel to file an appeal because he "didn't know about an appeal" until he was informed of such by other inmates. (*Id.* at 33.) Rodriguez would have "appeal[ed] the Motions to Suppress" because he "knew [his] Miranda rights weren't read." (*Id.*)

Rodriguez's trial counsel testified at the evidentiary hearing that he did not "remember [Rodriguez] asking [him] to file an appeal." (ECF No. 25-17 at 45, 53.) Rodriguez's trial counsel "was a little surprised based on [his] experience that [Rodriguez] got the max[imum]" sentence, but he explained that "[j]ust because you don't like the sentence, that is not really the basis for appeal." (*Id.* at 53.) Although he acknowledged that Rodriguez was unhappy with the sentence he received, there were no appealable issues that stood out to Rodriguez's trial counsel because the state district court thoroughly canvassed Rodriguez before accepting his plea. (*Id.* at 54, 58.)

The state district court, finding that Rodriguez was not credible (ECF No. 25-18 at 3), held that "there is no evidence or reasonable inference from evidence or legal argument that there would be any ground for appeal in this case" and that Rodriguez "entered his guilty plea freely and voluntarily without threats or promises or any kind and with an understanding of the nature of the offense and the consequences of his guilty plea." (ECF No. 25-17 at 68.)

The *Strickland* "test applies to claims . . . that counsel was constitutionally ineffective for failing to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). When counsel "disregards specific instructions from the defendant to file a notice

6

of appeal," counsel has acted unreasonably. *Id.* However, "where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken" the question is "whether counsel in fact consulted with the defendant about the appeal." *Id.* at 478. Consulting means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* However, "[i]f counsel has not consulted with the defendant, the court must in turn ask . . . whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.* Following the rejection of a bright-line rule, the Supreme Court concluded that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. An example of the first instance imposing a duty to consult is where "there are nonfrivolous grounds for appeal." *Id.* Where the defendant pleaded guilty, "the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.* And in order "to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

Rodriguez never gave his trial counsel specific instructions to file a notice of appeal, and it is not clear from the record that Rodriguez's trial counsel consulted him about appealing. Thus, the question here is whether Rodriguez's trial counsel's duty to consult Rodriguez about an appeal was triggered. *Flores-Ortega*, 528 U.S. at 480. The Nevada Court of Appeals reasonably determined that the state district court's finding that Rodriguez failed to demonstrate that his trial counsel's duty to inform him of the right to a direct appeal was triggered was supported by substantial evidence.

First, there was no reason for Rodriguez's trial counsel to think that "a rational defendant would want to appeal." *Id.* at 480. As Rodriguez's trial counsel testified at the

post-conviction evidentiary hearing, there were no appealable issues that stood out to him and "[j]ust because you don't like the sentence, that is not really the basis for appeal." (ECF No. 25-17 at 53-54.) Indeed, Rodriguez was sentenced to life without the possibility of parole (ECF No. 25-3 at 2), which Rodriguez acknowledged was a possible sentence he faced as a result of his plea. (*See* ECF No. 25-1 at 4-5.) Further, Rodriguez's guilty plea agreement provided that he understood that he had "the right to appeal from adverse rulings on pretrial motions only if the State and the Court consent[ed] to [his] right to appeal," and that, "[i]n the absence of such an agreement, [he] underst[oo]d that any substantive or procedural pretrial issue or issues which could have been raised at trial [were] waived by [his] plea." (ECF No. 25-1 at 4.) Similarly, during Rodriguez's guilty plea canvass, the state district court asked if Rodriguez understood that "if the Court accepts [his] plea of guilty, there will be no issues for the appellate court to consider." (ECF No. 25-2 at 71.) Rodriguez answered in the affirmative. (*Id.*) These facts weigh against a finding that Rodriguez's trial counsel had a reason to think that Rodriguez would have wanted to appeal his judgment of conviction.

Second, there was no reason for Rodriguez's trial counsel to think that Rodriguez "was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. Rodriguez asserts that his statements during the plea canvass wherein he asked whether he could appeal his guilty plea triggered his trial counsel's duty to talk to him about appealing. (ECF No. 46 at 10.) It cannot be concluded that this question made to the state district court two months prior to his sentencing hearing demonstrated Rodriguez's interest in appealing his judgment of conviction. It was merely a question about his right to appeal his plea in response to a statement by the state district court that Rodriguez could appeal a guilty verdict. (*See* ECF No. 25-2 at 71). This clarification of his rights was not an indication to this trial counsel that he wanted to appeal, especially since Rodriguez had yet to be sentenced.

///

Accordingly, because the Nevada Court of Appeals reasonably determined that Rodriguez failed to demonstrate deficiency on the part of his trial counsel for not advising him of his right to appeal, *Strickland*, 466 U.S. at 688, Rodriguez is denied federal habeas relief for Ground 1(b).

**B. Ground 2**

In Ground 2, Rodriguez alleges that his federal constitutional rights were violated when his trial counsel failed to investigate and present mitigating evidence on his behalf at sentencing. (ECF No. 23 at 12.) Specifically, Rodriguez asserts that his trial counsel should have presented his sister, Sandra Florez, as a mitigating witness to testify about his nonviolent character. (*Id.*) Rodriguez contends that he received a harsher sentence than he otherwise would have if his trial counsel had properly prepared for the sentencing hearing and presented mitigating evidence. (ECF No. 46 at 13.)

During Rodriguez's sentencing hearing, Rodriguez's trial counsel explained that "there were four letters that were faxed to [his] office [the day before]. . . and some [other letters that were sent later that evening] that [he] presented to the Court." (ECF No. 25-4 at 3.) Rodriguez's trial counsel "ask[ed] the Court to consider [those letters] in mitigation of sentence." (*Id.* at 4.) The State summarized those letters: "you have letters from his ex-wife and other relatives asking for leniency, your honor, indicating that he's a caring and loving husband, that they're basically shocked by this, didn't think he was capable of it." (*Id.* at 13.) Rodriguez's trial counsel argued that "Rodriguez did ultimately take responsibility for his actions," that Rodriguez's "intention was never that someone was going to die," and that an appropriate sentence would be "the life term with parole beginning after 20 years." (*Id.* at 4.)

At his post-conviction evidentiary hearing, Rodriguez testified that he did not meet or talk to his trial counsel between his change of plea hearing and his sentencing hearing, so he never had the chance to discuss any type of mitigation with him. (ECF No. 25-17 at 5, 30.) Rodriguez did not know that he "was supposed to present witnesses" or other evidence at his sentencing hearing, so "he never brought it up" with his trial

counsel. (*Id.* at 30-31.) Rodriguez did, however, request that his ex-wife "gather up some letters" to be presented to the state district court. (*Id.* at 31.)

Rodriguez's trial counsel testified at the post-conviction evidentiary hearing that he did not remember what he did to prepare for Rodriguez's sentencing. (ECF No. 25-17 at 45, 51.) However, he explained that "if [he] had letters from somebody, [he] would have probably been the one to ask somebody to write a letter on behalf of [the] client." (*Id.* at 55.)

Rodriguez called Sandra Florez, his sister, to testify at his post-conviction evidentiary hearing that he was never violent and was, in fact, "a great older brother, caring, loving, hard working." (ECF No. 25-17 at 60-61, 65.) Florez was never contacted by anyone to speak on Rodriguez's behalf at his sentencing hearing, but she admitted that she was not in attendance for that hearing and did not remember why she failed to attend. (*Id.* at 61, 64.)

Following the presentation of witnesses and argument at the post-conviction evidentiary hearing, the state district court found that Rodriguez's trial counsel was not deficient, explaining that Rodriguez's trial counsel "made an argument in mitigation on behalf of his client, . . . he opposed the State's position at sentencing[, and h]e presented letters to the Court in further mitigation." (ECF No. 25-17 at 74.) The state district court further reasoned that "[t]he only potential witness who has been identified during this hearing is . . . Ms. Florez," and "Ms. Florez testified she knows nothing about the circumstances of the murder," that Rodriguez "never advised her of his interest in having her appear to testify at the sentencing," and that she "did not appear [at Rodriguez's sentencing] and she has no reason for why she didn't appear." (*Id.*)

Counsel's performance at the penalty phase is measured against "prevailing professional norms." *Strickland*, 466 U.S. at 688. And this Court "must avoid the temptation to second-guess [counsel's] performance or to indulge 'the distorting effects of hindsight.'" *Mayfield v. Woodford*, 270 F.3d 915, 927 (9th Cir. 2001) (citing *Strickland*, 466 U.S. at 689). But "judicial deference to counsel is predicated on counsel's

performance of sufficient investigation and preparation to make reasonably informed, reasonably sound judgments." *Id.* When challenging a trial counsel's actions in failing to present mitigating evidence during a sentencing hearing, the "principal concern . . . is not whether counsel should have presented a mitigation case[, but instead] . . . whether the investigation supporting counsel's decision not to introduce mitigating evidence . . . *was itself reasonable*." *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003) (emphasis in original).

The Nevada Court of Appeals reasonably determined that the state district court's finding that Rodriguez failed to demonstrate that further sentencing preparation would have produced mitigating witnesses whose testimony would have led to a lesser sentence was supported by substantial evidence. Rodriguez's trial counsel did not remember what he did to prepare for Rodriguez's sentencing, but he explained that he probably asked individuals to write letters on Rodriguez's behalf. (ECF No. 25-17 at 51, 55.) These letters from Rodriguez's family asked for leniency for Rodriguez, indicating that he was a caring person. (*See* ECF No. 25-4 at 13.) Although Rodriguez's mitigating evidence was not presented in the form that Rodriguez allegedly desired—live testimony—Rodriguez's trial counsel presented this mitigating evidence in a strategic, reasonable manner. *Harrington*, 562 U.S. at 106 ("Rare are the situations in which the wide latitude counsel must have in making tactical decisions will be limited to any one technique or approach."); *see also Strickland*, 466 U.S. at 688-89 ("No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant."). In addition to these letters, Rodriguez's trial counsel also made arguments in support of mitigation: Rodriguez's trial counsel argued that Rodriguez took responsibility for his actions and never intended for the victim to die. (ECF No. 25-4 at 4.) Accordingly, the Nevada Court of Appeals reasonably determined that Rodriguez's trial counsel was not deficient. *Strickland*, 466 U.S. at 688.

///

Further, regarding prejudice, Florez's testimony at the post-conviction evidentiary hearing about Rodriguez being a "caring, loving, hard working" individual appears to mirror the mitigating letters presented to the state district court. (ECF No. 25-17 at 60-61.) As such, Rodriguez fails to demonstrate that the addition of Florez's opinion about his character would have changed his sentence. *Strickland*, 466 U.S. at 694; *see also Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("*Strickland* prejudice is not established by mere speculation."); *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (denying an ineffective-assistance-of-counsel claim based on counsel's refusal to call witnesses because the defendant "offers no indication of . . . how their testimony might have changed the outcome of the hearing"). Therefore, the Nevada Court of Appeals reasonably determined that Rodriguez failed to demonstrate prejudice. *Strickland*, 466 U.S. at 694.

Thus, because the Nevada Court of Appeals reasonably determined that Rodriguez's ineffective-assistance-of-counsel claim lacked merit, Rodriguez is denied federal habeas relief for Ground 2.[1]

## V.     CERTIFICATE OF APPEALABILITY

This is a final order adverse to Rodriguez. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability ("COA"). Therefore, this Court has *sua sponte* evaluated the claims within the Petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional

---

[1] Rodriguez requested that this Court "[c]onduct an evidentiary hearing at which proof may be offered concerning the allegations in [his] [A]mended [P]etition and any defenses that may be raised by [R]espondents." (ECF No. 23 at 14.) Rodriguez fails to explain what evidence would be presented at an evidentiary hearing, especially since an evidentiary hearing was held before the state district court on Rodriguez's state habeas petition. Additionally, this Court has already determined that Rodriguez is not entitled to relief, and neither further factual development nor any evidence that may be proffered at an evidentiary hearing would affect this Court's reasons for denying relief. Accordingly, Rodriguez's request for an evidentiary hearing is denied.

right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Applying this standard, the Court finds that a certificate of appealability is unwarranted.

**VI.    CONCLUSION**

It is therefore ordered that the First Amended Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254 (ECF No. 23) is denied.

It is further ordered that Petitioner is denied a certificate of appealability.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 6th day of May 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE